

# PAVAN PARIKH
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

**ELECTRONICALLY FILED**
**May 30, 2025 04:33 PM**
**PAVAN PARIKH**
**Clerk of Courts**
**Hamilton County, Ohio**
**CONFIRMATION 1641921**

| | |
|---|---|
| **STATE FARM FIRE AND CASUALTY COMPANY** vs. **DGL GROUP LTD** | **A 2502743** |

**FILING TYPE: INITIAL FILING (OUT OF COUNTY) WITH NO JURY DEMAND**

**PAGES FILED: 22**

EFR200

E-FILED 05/30/2025 4:33 PM / CONFIRMATION 1641921 / A 2502743 / COMMON PLEAS DIVISION / IFO

EXHIBIT A

## IN THE HAMILTON COUNTY COURT OF COMMON PLEAS

State Farm Fire and Casualty Company
and
Donald Scalf
and
Melanie Scalf
c/o Zeehandelar, Sabatino & Associates, LLC
471 East Broad Street, Suite 1500
Columbus, Ohio 43215

                        Plaintiffs,

                                           Case No:
                                           Judge

 vs.

DGL Group Ltd.
2045 Lincoln Hwy. Floor 3
Edison, NJ 08817

and

Walmart Inc.
c/o CT Corporation System, Statutory Agent
320 South Izard Street
Little Rock, Arkansas 72201

and

Safpow
6026 Ronchamps Drive
Round Rock, TX 76681

and

Amazon.com, Inc.
410 Terry Ave. North
Seattle, Washington 98109-5210

and

Dongguanshi Bochuang Nengyuan Youxian Gongsi
99216 Guangdong, China

Defendants.

## COMPLAINT FOR DAMAGES

## COUNT ONE

## Facts common to all allegations

1. Plaintiff, State Farm Fire and Casualty Company, is duly authorized to sell insurance in the state of Ohio and at all times hereinafter mentioned, had in full force and effect a Homeowner policy of insurance which provided coverage to real and personal property owned by Donald and Melanie Scalf (hereinafter referred to collectively as the "Insured") located at 8506 Denallen Drive in Cincinnati, Hamilton County, Ohio (the "Residence"). Said policy was subject to a $3,639.00 deductible.

2. Said policy also provided Additional Living Expense coverage to the Insured.

3. This case arises out of a fire that occurred on June 3, 2023 at the Insured's aforementioned Residence.

4. The subject fire originated within the interior of the Insured's attached, two-car garage.

5. More specifically, the fire originated near floor level in the northwest corner of the garage.

6. In the area of the fire's origin, was a hoverboard, which was charging at the time of the fire.

7. The hoverboard was a Hover-1, Model Hi-Star Hoverboard with LED headlights (hereinafter, the "Hover-1 Hoverboard").

2

8. The Insured had purchased the subject Hover-1 Hoverboard in 2019 from Defendant, Walmart, Inc.

9. The Insured did not purchase the Hover-1 Hoverboard online, but at a retail Walmart store.

10. The Hover-1 Hoverboard was last ridden on Friday, June 2, 2023 by the Insured's son.

11. The Hover-1 Hoverboard was ridden until the battery expired.

12. On Saturday, June 3, 2023 at approximately 3:30 p.m., the Insured's son commenced with charging the Hover-1 Hoverboard.

13. To do so, he utilized a Safpow brand replacement charger, plugging the male plug end of the charger into the receptacle on the north garage wall and the other end of the Safpow charging cord into the Hover-1 Hoverboard, located on the garage floor, by a concrete step.

14. The Insured had purchased the Safpow brand charger online from Defendant, Amazon.com, Inc.'s website on December 19, 2022.

15. While the Hover-1 Hoverboard was charging, its battery systems failed.

16. At least one, if not various 18650 lithium-ion cells experienced an overtemperature event leading to an over-pressure event, causing the cells to expand, severely ventilate and ignite local combustibles, causing the June 3, 2023 fire at the Insured's Residence.

17. Pressures were significant enough to cause twelve (12) 18650 cells to be propelled distances away from the Hover-1 Hoverboard.

18. The Insured's Hover-1 Hoverboard had a sticker on it indicating that it had a UL (Underwriters Laboratories ) 2272 assignment.

3

19. UL 2272 is a safety standard for electrical systems in personal e-mobility devices, including hoverboards.

20. UL 2272 is the American National Standards Institute (ANSI) accredited national Standard in the United States of America.

21. UL 2272 evaluates the safety of the entire electrical system, rather than individual components, to identify potential hazards such as electrical shock and fire.

22. Compliance with UL 2272 involves specific requirements for design, construction, materials, and safety features.

23. Devices that meet the UL 2272 standard are certified, indicating they have undergone rigorous testing and have been deemed safe.

24. The purpose of UL 2272 is to help prevent safety incidents like fires and electrical shocks caused by malfunctioning batteries or electrical systems.

25. UL 2272 requires the manufacturer to incorporate protective circuits to account for various out-of-tolerance conditions, including temperature, current, and voltage.

26. As set forth earlier, the Hover-1 Hoverboard battery suffered an internal failure which caused the June 3, 2023 fire at the Insured's Residence.

27. The internal failure was due to either a defect inherent in the battery (which would have resulted in an increase in internal cell temperatures and pressures) or an over-voltage condition created by the connection of the 42VDC Safpow Charger to the 25VDC Hover-1 Hoverboard.

4

28. In either event, the Hover-1 Hoverboard battery management/protection system, per UL 2272, failed to detect either the over-voltage or temperature condition and remove power from the hoverboard to allow the internal failure to subside.

29. Had it done so, the Hover-1 Hoverboard's battery would not have suffered an internal failure, causing the June 3, 2023 fire at the Insured's Residence.

30. In addition, Plaintiffs state that the Safpow brand charger was described on the Amazon advertisement page as compatible with Hover-1 type hoverboards.

31. The Safpow website further represented to the public that its charger had inherent protective circuits incorporated to ensure safe charging, including temperature, current, and voltage monitoring.

32. The Safpow charger, despite its advertisements and representations to the public, failed to detect either the over-voltage or temperature condition and remove power from the Hover-1 Hoverboard to allow the internal failure to subside.

33. Had it done so, the Hover-1 Hoverboard's battery would not have suffered an internal failure, causing the June 3, 2023 fire at the Insured's Residence.

34. As a direct and proximate result of the fire, the Insured sustained damage to real property (the Residence) in the amount of $ 284,943.31.

35. As a further direct and proximate result of the fire, the Insured sustained damage to personal property in the amount of $135,179.36.

5

36. As a further direct and proximate result of the fire, the Insured sustained additional living expenses in the amount of $46,101.33.

37. Pursuant to the aforementioned policy of insurance Plaintiff, State Farm Fire and Casualty Company was required to and did pay to and/or on behalf of its Insured the sum of $462,585.00 for the damage to real property, personal property and additional living expenses, and thereby became subrogated in that amount.

**COUNT TWO**

**Liability of Manufacturer, Ohio Revised Code § 2307.73 (A)(1) Defendant, DGL Group Ltd.**

38. Plaintiffs hereby incorporate paragraphs one through thirty-seven of this Complaint as if fully restated herein.

39. Defendant, DGL Group Ltd., sold the subject aforementioned Hover-1 Hoverboard and/or placed the subject Hover-1 Hoverboard into the stream of commerce in a defective condition unreasonably dangerous to the Insured.

40. The Insured was the ultimate user or consumer of the subject Hover-1 Hoverboard.

41. Defendant, DGL Group Ltd., was engaged in the business of manufacturing and/or selling the subject Hover-1 Hoverboard.

42. The subject Hover-1 Hoverboard was expected to and did reach the Insured without substantial change in the condition in which it was originally manufactured.

43. The June 3, 2023 fire was due to a defective condition associated with the subject Hover-1 Hoverboard that existed at the time the subject Hover-1 Hoverboard left the hands of Defendant, DGL Group Ltd.

44. Defendant, DGL Group Ltd., was the "Manufacturer" of the subject Hover-1 Hoverboard as defined in Ohio Revised Code § 2307.71(A)(9) which defines a "Manufacturer as "a person engaged in a business to design, formulate, produce, create, make, construct, assemble, or rebuild a product or a component of a product".

45. Pursuant to Ohio Revised Code § 2307.73 (A)(1), a Manufacturer is subject to liability for compensatory damages based on a product liability claim when the product in question was defective in manufacture or construction as described in section 2307.74 of the Revised Code, was defective in design or formulation as described in section 2307.75 of the Revised Code, was defective due to inadequate warning or instruction as described in section 2307.76 of the Revised Code or was defective because it did not conform to a representation made by its manufacturer as described in section 2307.77 of the Revised Code.

46. The subject Hover-1 Hoverboard in question was, in fact, defective in manufacture or construction as described in section 2307.74 of the Revised Code, was defective in design or formulation as described in section 2307.75 of the Revised was defective due to inadequate warning or instruction as described in section 2307.76 of the Revised Code and/or was defective because it did not conform to a representation made by its manufacturer as described in section 2307.77 of the Revised Code.

**COUNT THREE**

**Liability of Supplier, Ohio Revised Code § 2307.78**
**Defendant, DGL Group Ltd.**

47. Plaintiffs hereby incorporate paragraphs one through forty-six of this Complaint as if fully restated herein.

48. In the alternative, Plaintiffs state that Defendant, DGL Group Ltd., was a "Supplier" of the subject Hover-1 Hoverboard as defined in §2307.71(A)(15)(a) which defines a Supplier as "A person that, in the course of a business conducted for the purpose, sells, distributes, leases, prepares, blends, packages, labels, or otherwise participates in the placing of a product in the stream of commerce".

49. Defendant, DGL Group Ltd., is liable to Plaintiffs as a "Supplier" of the subject Hover-1 Hoverboard for the reasons stated and enumerated in Ohio Revised Code § 2307.78, including but not limited to Ohio Revised Code § 2307.78 (B)(1) and (B) (7).

50. Ohio Revised Code § 2307.78 (B)(1) provides that a supplier is liable as if it was the manufacturer of the subject product if "the manufacturer of that product is not subject to judicial process in this state".

51. Upon information and belief, Plaintiffs state that the subject Hover-1 Hoverboard was manufactured by a Chinese entity, who, in fact, may not be subject to judicial process in this state.

52. Ohio Revised Code § 2307.78 (B)(7) further provides that a supplier is liable as if it was the manufacturer of the subject product if that "supplier in question marketed that product under its own label or trade name".

53. Hover-1 is a registered trademark of Defendant, DGL Group Ltd.

8

54. Defendant, DGL Group Ltd., marketed the subject Hover-1 Hoverboard under its own label or trade name.

**COUNT FOUR**

**Liability of Supplier, Ohio Revised Code § 2307.78**
**Defendant, Walmart, Inc.**

55. Plaintiffs hereby incorporate paragraphs one through fifty-four of this Complaint as if fully restated herein.

56. Plaintiffs state that Defendant, Walmart Inc., was a "Supplier" of the subject Hover-1 Hoverboard as defined in §2307.71(A)(15)(a) which defines a Supplier as "A person that, in the course of a business conducted for the purpose, sells, distributes, leases, prepares, blends, packages, labels, or otherwise participates in the placing of a product in the stream of commerce"

57. Defendant, Walmart Inc., is liable to Plaintiffs as a "Supplier" of the subject Hover-1 Hoverboard for the reasons stated and enumerated in Ohio Revised Code § 2307.78, including but not limited to Ohio Revised Code § 2307.78 (B)(1) which provides that a supplier is liable as if it was the manufacturer of the subject product if "the manufacturer of that product is not subject to judicial process in this state".

58. Upon information and belief, Plaintiffs state that the subject Hover-1 Hoverboard was manufactured by a Chinese entity, who, in fact, may not be subject to judicial process in this state.

9

**COUNT FIVE**

**Liability of Manufacturer, Ohio Revised Code § 2307.73 (A)(1) Defendant, Safpow**

59. Plaintiffs hereby incorporate paragraphs one through fifty-eight of this Complaint as if fully restated herein.

60. Defendant, Safpow, sold the subject aforementioned Safpow brand replacement charger and/or placed the subject Safpow brand replacement charger into the stream of commerce in a defective condition unreasonably dangerous to the Insured.

61. The Insured was the ultimate user or consumer of the subject Safpow brand replacement charger.

62. Defendant, Safpow, was engaged in the business of manufacturing and/or selling the subject Safpow brand replacement charger.

63. The subject Safpow brand replacement charger was expected to and did reach the Insured without substantial change in the condition in which it was originally manufactured.

64. The June 3, 2023 fire was due to a defective condition associated with the subject Safpow brand replacement charger that existed at the time the subject Safpow brand replacement charger left the hands of Defendant, Safpow.

65. Defendant, Safpow, was the "Manufacturer" of the subject Safpow brand replacement charger as defined in Ohio Revised Code § 2307.71(A)(9) which defines a "Manufacturer as "a person engaged in a business to design, formulate, produce, create, make, construct, assemble, or rebuild a product or a component of a product".

10

66. Pursuant to Ohio Revised Code § 2307.73 (A)(1), a Manufacturer is subject to liability for compensatory damages based on a product liability claim when the product in question was defective in manufacture or construction as described in section 2307.74 of the Revised Code, was defective in design or formulation as described in section 2307.75 of the Revised Code, was defective due to inadequate warning or instruction as described in section 2307.76 of the Revised Code and/or was defective because it did not conform to a representation made by its manufacturer as described in section 2307.77 of the Revised Code.

67. The subject Safpow brand replacement charger in question was, in fact, defective in manufacture or construction as described in section 2307.74 of the Revised Code, was defective in design or formulation as described in section 2307.75 of the Revised Code, was defective due to inadequate warning or instruction as described in section 2307.76 of the Revised Code and/or because it did not conform to a representation made by its manufacturer as described in section 2307.77 of the Revised Code.

11

## COUNT SIX

**Liability of Supplier, Ohio Revised Code § 2307.78**
**Defendant, Safpow**

68. Plaintiffs hereby incorporate paragraphs one through sixty-seven of this Complaint as if fully restated herein.

69. In the alternative, Plaintiffs state that Defendant, Safpow, was a "Supplier" of the subject Safpow brand replacement charger as defined in Ohio Revised Code §2307.71(A)(15)(a) which defines a Supplier as "A person that, in the course of a business conducted for the purpose, sells, distributes, leases, prepares, blends, packages, labels, or otherwise participates in the placing of a product in the stream of commerce".

70. Defendant, Safpow, is liable to Plaintiffs as a "Supplier" of the subject Safpow brand replacement charger for the reasons stated and enumerated in Ohio Revised Code § 2307.78 (A)(2) which provides that a supplier is subject to liability for compensatory damages based on a product liability claim if "the product in question did not conform, when it left the control of the supplier in question, to a representation made by that supplier, and that representation and the failure to conform to it were a proximate cause of harm for which the claimant seeks to recover compensatory damages".

71. As set forth in Count One of this Complaint, the subject Safpow brand replacement charger was described on the Amazon advertisement page as compatible with Hover-1 type hoverboards, when it was not.

12

72. Defendant, Safpow, is also liable to Plaintiffs as a "Supplier" of the subject Safpow brand replacement charger for the reasons stated and enumerated in Ohio Revised Code § 2307.78, including but not limited to Ohio Revised Code § 2307.78 (B)(1) and (B) (7).

73. Ohio Revised Code § 2307.78 (B)(1) provides that a supplier is liable as if it was the manufacturer of the subject product if "the manufacturer of that product is not subject to judicial process in this state."

74. Upon information and belief, Plaintiffs state that the subject Safpow brand replacement charger was manufactured by a Chinese entity, who, in fact, may not be subject to judicial process in this state.

75. Ohio Revised Code § 2307.78 (B)(7) provides that a supplier is liable as if it was the manufacturer of the subject product if that "supplier in question marketed that product under its own label or trade name".

76. Defendant, Safpow, marketed the subject Safpow brand replacement charger under its own label or trade name.

**COUNT SEVEN**

**Liability of Supplier, Ohio Revised Code § 2307.78**
**Defendant, Amazon.com, Inc.**

77. Plaintiffs hereby incorporate paragraphs one through seventy-six of this Complaint as if fully restated herein.

78. The Insured purchased the subject Safpow brand replacement charger online from Defendant, Amazon.com, Inc.'s website (https://www.amazon.com/) on December 19, 2022.

13

79. The subject Safpow brand replacement charger was "Fulfilled by Amazon.com" and, therefore, was sent by Defendant, Safpow, to an Amazon.com, Inc. fulfillment center and thereafter selected, packed and shipped by Defendant, Amazon.com, Inc., to the Insured.

80. To elaborate, "Fulfilled by Amazon" (FBA) refers to a program where sellers outsource order fulfillment to Amazon, who then handles packing, shipping, and customer service for products listed on Amazon.com.

81. According to Defendant, Amazon.com, Inc.'s website (https://www.amazon.com/), "Fulfillment by Amazon (FBA) is a program that lets you outsource order fulfillment to Amazon and offer customers free, two-day shipping through Prime. By enrolling in FBA, you can send your products into Amazon's global network of fulfillment centers, and we'll pick, pack, and ship orders, as well as handle customer service and returns. FBA is part of a fully automated set of services we call Supply Chain by Amazon".

14

82. Defendant, Amazon.com, Inc.'s website (https://www.amazon.com/), further provides the following illustration as to how the "FBA" program works:



15

83. Plaintiffs state that Defendant, Amazon.com, Inc., was a "Supplier" of the subject Safpow brand replacement charger as defined in Ohio Revised Code §2307.71(A)(15)(a) which defines a Supplier as "A person that, in the course of a business conducted for the purpose, sells, distributes, leases, prepares, blends, packages, labels, or otherwise participates in the placing of a product in the stream of commerce".

84. The Ohio Supreme Court in the case of ***Stiner v. Amazon.com, Inc.***, 2020-Ohio-4632, ¶ 19, 162 Ohio St. 3d 128, 132, 164 N.E.3d 394, 399 stated that, "Applying that rule here, the catchall provision—"otherwise participates in the placing of a product in the stream of commerce"—embraces conduct of a similar character as the sale, ***distribution***, lease, preparation, blending, packaging or labeling of a product. All the specified actions ***involve some act of control over a product*** or preparation of a product for use or consumption. (emphasis added).

85. The Ohio Supreme Court in ***Stiner v. Amazon.com, Inc.***, 2020-Ohio-4632, ¶ 19, 162 Ohio St. 3d 128, 132, 164 N.E.3d 394, 399, further provided that "When reading the definition of "supplier" in R.C. 2307.71(A)(15)(a)(i) together with the list of entities that are not suppliers found in R.C. 2307.71(A)(15)(b), we conclude that a person who "otherwise participates in the placing of a product in the stream of commerce" ***must exert some control over the product as a prerequisite to supplier liability***". (emphasis added).

16

86. As set forth above, the subject Safpow brand replacement charger was "Fulfilled by Amazon.com" which, by its own's definition, lets its sellers "outsource order fulfillment to Amazon and offer customers free, two-day shipping through Prime" and send its "products into Amazon's global network of fulfillment centers" where, Amazon.com, Inc. will "pick, pack, and ship orders, as well as handle customer service and returns. FBA is part of a fully automated set of services we call Supply Chain by Amazon",

87. Accordingly, Defendant, Amazon.com, Inc., did, in fact, exert control over the Safpow brand replacement charger and was involved in its distribution to the Insured and otherwise participated in the placing of the subject Safpow brand replacement charger in the stream of commerce.

88. As set forth in Count Five of this Complaint, the subject Safpow brand replacement charger in question was defective in manufacture or construction as described in section 2307.74 of the Revised Code, was defective in design or formulation as described in section 2307.75 of the Revised Code, was defective due to inadequate warning or instruction as described in section 2307.76 of the Revised Code and/or because it did not conform to a representation made by its manufacturer as described in section 2307.77 of the Revised Code.

89. Plaintiffs state that Defendant, Amazon.com, Inc., is liable to Plaintiffs as a "Supplier" of the subject Safpow brand replacement charger for the reasons stated and enumerated in Ohio Revised Code § 2307.78, including but not limited to Ohio Revised Code § 2307.78 (B)(1).

17

90. Ohio Revised Code § 2307.78 (B)(1) provides that a supplier is liable as if it was the manufacturer of the subject product if "the manufacturer of that product is not subject to judicial process in this state."

91. Upon information and belief, Plaintiffs state that the manufacturer of the subject Safpow brand replacement charger was a Chinese entity, who, in fact, may not be subject to judicial process in this state.

92. Plaintiffs further state that Defendant, Amazon.com, Inc., is liable to Plaintiffs as a "Supplier" of the subject Safpow brand replacement charger for the reasons stated and enumerated in Ohio Revised Code § 2307.78 (A)(1) which provides that a supplier is subject to liability for compensatory damages based on a product liability claim if "the supplier in question was negligent and that, negligence was a proximate cause of harm for which the claimant seeks to recover compensatory damages".

18

93. In the case at hand, the Safpow brand replacement charger was described on the Amazon.com advertisement page as compatible with Hover-1 type hoverboards. A similar advertisement currently on the Amazon.sg website (Singapore) (link https://www.amazon.sg/SafPow-Battery-Charger-Universal-Replacer/dp/B0966NXBB7) is embedded below:



19

94. Defendant, Amazon.com, Inc., was negligent inasmuch as it knew or should have known that the Safpow brand replacement charger described on the Amazon advertisement page of its website was not, in fact, compatible with all Hover-1 type hoverboards.

95. Said negligence was a direct and proximate cause of the fire, damage and loss sustained by Plaintiffs.

**COUNT EIGHT**

**Liability of Manufacturer, Ohio Revised Code § 2307.73 (A)(1)**
**Defendant, Dongguanshi Bochuang Nengyuan Youxian Gongsi**

96. Plaintiffs hereby incorporate paragraphs one through ninety-five of this Complaint as if fully restated herein.

97. Defendant, Dongguanshi Bochuang Nengyuan Youxian Gongsi, sold the subject aforementioned Safpow brand replacement charger and/or placed the subject Safpow brand replacement charger into the stream of commerce in a defective condition unreasonably dangerous to the Insured.

98. The Insured was the ultimate user or consumer of the subject Safpow brand replacement charger.

99. Defendant, Dongguanshi Bochuang Nengyuan Youxian Gongsi, was engaged in the business of manufacturing and/or selling the subject Safpow brand replacement charger.

100. The subject Safpow brand replacement charger was expected to and did reach the Insured without substantial change in the condition in which it was originally manufactured.

20

101.     The June 3, 2023 fire was due to a defective condition associated with the subject Safpow brand replacement charger that existed at the time the subject Safpow brand replacement charger left the hands of Defendant, Dongguanshi Bochuang Nengyuan Youxian Gongsi.

102.     Defendant, Dongguanshi Bochuang Nengyuan Youxian Gongsi, was the "Manufacturer" of the subject Safpow brand replacement charger as defined in Ohio Revised Code § 2307.71(A)(9) which defines a "Manufacturer as "a person engaged in a business to design, formulate, produce, create, make, construct, assemble, or rebuild a product or a component of a product".

103.     Pursuant to Ohio Revised Code § 2307.73 (A)(1), a Manufacturer is subject to liability for compensatory damages based on a product liability claim when the product in question was defective in manufacture or construction as described in section 2307.74 of the Revised Code, was defective in design or formulation as described in section 2307.75 of the Revised Code, was defective due to inadequate warning or instruction as described in section 2307.76 of the Revised Code or was defective because it did not conform to a representation made by its manufacturer as described in section 2307.77 of the Revised Code.

104.     The subject Safpow brand replacement charger in question was, in fact, defective in manufacture or construction as described in section 2307.74 of the Revised Code, was defective in design or formulation as described in section 2307.75 of the Revised Code, was defective due to inadequate warning or instruction as described in section 2307.76 of the Revised Code and/or was

21

defective because it did not conform to a representation made by its manufacturer as described in section 2307.77 of the Revised Code .

**WHEREFORE**, Plaintiff, State Farm Fire and Casualty Company, demands judgment against Defendants, jointly and severally, in the amount of $462,585.00 and Plaintiffs, Donald and Melanie Scalf, demand judgment against Defendants, jointly and severally, in the amount of $3,639.00, plus costs and interest.

**ZEEHANDELAR, SABATINO**
**& ASSOCIATES, LLC**


BY: _/s/ Alessandro Sabatino, Jr._
    Alessandro Sabatino, Jr.   (0062406)
    Attorney for Plaintiffs
    471 East Broad Street, Suite 1500
    Columbus, Ohio 43215
    Phone:  (614) 458-1200   (23-149)
    Fax:     (614) 458-1201
    E-Mail: asabatino@zsa-law.com

22